[Cite as *State v. Caudell*, 2020-Ohio-1557.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-A-0062** |
| DAVID W. CAUDELL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2018 CR 00602.

Judgment: Affirmed.

*Cecilia M. Cooper*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, Ohio 44047 (For Plaintiff-Appellee).

*Rick L. Ferrara,* 2077 East 4th Street, 2nd Floor, Cleveland, Ohio 44114 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1}  Appellant, David W. Caudell ("Mr. Caudell"), appeals the judgment of the Ashtabula County Court of Common Pleas sentencing him to concurrent sentences of seven years of incarceration for aggravated vehicular homicide, a felony of the second degree, and six months of incarceration for operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance, a misdemeanor of the first degree, following his guilty pleas.

{¶2} Mr. Caudell contends that his guilty pleas were not knowingly, intelligently, and voluntarily entered. Specifically, he argues that the trial court did not comply with Crim.R. 11 by failing to sufficiently advise him of his right to remain silent at trial.

{¶3} After a careful review of the record and pertinent law, we find as follows: First, the trial court was not required to use the phrase "right to remain silent" or advise Mr. Caudell that no one could comment on his failure to testify. Second, the trial court explained Mr. Caudell's privilege against compulsory self-incrimination in a manner reasonably intelligible to him. Specifically, the trial court's statement that "you're not required to testify against yourself" effectively conveyed his right against compelled testimony, and Mr. Caudell acknowledged his understanding that he was waiving such a right. Therefore, Mr. Caudell's guilty pleas were knowingly, intelligently, and voluntarily entered.

{¶4} Thus, we affirm the judgment of the Ashtabula County Court of Common Pleas.

**Substantive and Procedural History**

{¶5} On the morning of May 3, 2018, Mr. Caudell was traveling westbound on State Route 84 from State Route 534 in Harpersfield Township. His vehicle traveled left of center and off the south side of the roadway, striking, head on, a vehicle that was traveling eastbound on State Route 84. The driver of the other vehicle sustained fatal injuries as a result of the crash.

{¶6} The Ohio State Patrol conducted a toxicology test from a urine sample Mr. Caudell provided shortly after the accident. The test results showed the presence of cocaine in Mr. Caudell's system.

2

{¶7} In September 2018, the Ashtabula County Grand Jury indicted Mr. Caudell on the following counts: (1) aggravated vehicular homicide, a felony of the second degree, in violation of R.C. 2903.06(A)(1)(a) and (B)(1)(2) (Count 1); (2) vehicular homicide, a misdemeanor of the first degree, in violation of R.C. 2903.06(A)(3)(a) and (C) (Count 2); (3) operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(j)(ii) and (G)(1) (Count 3); and operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(j)(iii) and (G)(1) (Count 4). Mr. Caudell initially pleaded not guilty to the charges.

{¶8} In April 2019, Mr. Caudell withdrew his former pleas of not guilty and entered written and oral pleas of guilty to Count 1 (aggravated vehicular homicide) and Count 3 (operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance). At the plea hearing, the trial court engaged in a colloquy with Mr. Caudell pursuant to Crim.R. 11. With respect to Mr. Caudell's Fifth Amendment privilege against compulsory self-incrimination, the following exchange took place:

{¶9} "[TRIAL COURT]: Do you understand that you're not required to testify against yourself?

{¶10} "[MR. CAUDELL]: Yes, Your Honor.

{¶11} "[TRIAL COURT]: Are you waiving that right?

{¶12} "[MR. CAUDELL]: Yes."

{¶13} After hearing the factual basis for the pleas, the trial court accepted Mr. Caudell's guilty pleas, found him guilty, and dismissed the remaining counts. The trial court ordered a presentence investigation report and scheduled the matter for sentencing.

{¶14} In June 2019, the trial court held a sentencing hearing and sentenced Mr. Caudell to a mandatory seven years of incarceration on Count 1 and six months of incarceration on Count 3, to be served concurrently, no fine on Count 1, a mandatory fine of $375 on Count 3, court costs, and a lifetime driver's license suspension. The trial court subsequently issued a judgment entry memorializing Mr. Caudell's guilty pleas and sentences.

{¶15} Mr. Caudell appealed and sets forth the following sole assignment of error:

{¶16} "The trial court failed to comply with Crim.R. 11 by failing to sufficiently advise appellant of his right to remain silent at trial."

**Standard of Review**

{¶17} This court reviews de novo whether the trial court accepted a plea in compliance with Crim.R. 11. (Citation omitted.) *State v. Shepard*, 11th Dist. Ashtabula No. 2019-A-0024, 2019-Ohio-3995, ¶39.

**Law and Analysis**

{¶18} A criminal defendant's choice to enter a plea of guilty or no contest is a serious decision. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶25. The benefit to a defendant of agreeing to plead guilty is the elimination of the risk of receiving a longer sentence after trial. *Id.* But, by agreeing to plead guilty, the defendant loses several constitutional rights. (Citations omitted.) *Id.* The exchange of certainty for some of the most fundamental protections in the criminal justice system will not be permitted unless

the defendant is fully informed of the consequences of his or her plea. *Id.* Thus, unless a plea is knowingly, intelligently, and voluntarily made, it is invalid. *Id.*, citing *State v. Engle*, 74 Ohio St.3d 525, 527 (1996).

### *Crim.R. 11*

{¶19} Crim.R. 11 was adopted to ensure that certain information necessary for entering a knowing, intelligent, and voluntary plea would be conveyed to a defendant. (Citations omitted.) *State v. Gensert*, 11th Dist. Trumbull No. 2015-T-0084, 2016-Ohio-1163, ¶9. Relevant here is Crim.R. 11(C)(2), which provides as follows:

{¶20} "In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

{¶21} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

{¶22} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

{¶23} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a

5

reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

{¶24} Before accepting a guilty or no-contest plea, the court must make the determinations and give the warnings required by Crim.R. 11(C)(2)(a) and (b) and notify the defendant of the constitutional rights listed in Crim.R. 11(C)(2)(c). *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶13.

### *Strict Compliance*

{¶25} A trial court's compliance with Crim.R. 11(C)(2) is reviewed under two different standards, one applied to the "nonconstitutional" portions of the rule, i.e., subsections (a) and (b), and another applied to the "constitutional" portion, i.e., subsection (c). *Id.* For the constitutional rights outlined in subsection (c), "strict, or literal, compliance" with the rule is required. *Id.* at ¶18.

{¶26} The Supreme Court of Ohio has held that the preferred method of informing a criminal defendant of his or her constitutional rights during the plea colloquy is to use the language contained in Crim.R. 11(C)(2)(c). *Id.* However, the failure to comply literally with the provisions of subsection (c) does not automatically invalidate a guilty plea. *State v. Ballard*, 66 Ohio St.2d 473, 479 (1981). Failure to use the exact language contained in Crim.R. 11(C)(2)(c) in informing a criminal defendant of his constitutional rights is not grounds for vacating a plea as long as the record shows that the trial court explained these rights "in a manner reasonably intelligible to that defendant." *Id.* at paragraph two of the syllabus. A trial court can still convey the requisite information on constitutional rights to the defendant even when the court does not provide a word-for-word recitation

6

of the criminal rule, so long as the trial court actually explains the rights to the defendant. *Veney* at ¶27.

### *The Trial Court's Compliance*

{¶27} Relevant to this case is Crim.R. 11(C)(2)(c)'s requirement that the trial court personally address and inform the defendant, and determine that the defendant understands, that by the plea the defendant is waiving the privilege against compulsory self-incrimination. *See Veney* at ¶19.

{¶28} As indicated, at the plea hearing, the following exchange between the trial court and Mr. Caudell took place:

{¶29} "[TRIAL COURT]: Do you understand that you're not required to testify against yourself?

{¶30} "[MR. CAUDELL]: Yes, Your Honor.

{¶31} "[TRIAL COURT]: Are you waiving that right?

{¶32} "[MR. CAUDELL]: Yes."

{¶33} Mr. Caudell argues that the trial court's advisement did not meet the "plain language" of Crim.R. 11(C)(2)(c) because it did not state that Mr. Caudell "had the right to remain silent."

{¶34} The text of Crim.R. 11(C)(2)(c) does not contain the phrase "right to remain silent." Rather, the trial court must notify the defendant that he or she "cannot be compelled to testify against himself or herself * * * at a trial." The privilege against compulsory testimony is guaranteed by the Fifth Amendment to the U.S. Constitution, which states that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself," as well as Article I, Section 10 of the Ohio Constitution, which states that

7

"[n]o person shall be compelled, in any criminal case, to be a witness against himself * * *."

{¶35} The "right to remain silent" has been described as a "term of art synonymous with the Fifth Amendment privilege against self-incrimination." *State v. Henderson*, 2d Dist. Montgomery No. 21425, 2006-Ohio-6306, ¶7. Courts have found that advising a defendant that he is waiving his or her "right to remain silent" is sufficient to explain the privilege against compulsory self-incrimination and complies with Crim.R. 11(C). *See, e.g., State v. Burston*, 8th Dist. Cuyahoga No. 93645, 2010-Ohio-5120, ¶8. However, there is no requirement that a trial court use that phrase during a plea colloquy.

{¶36} Mr. Caudell cites to *State v. Gaines*, 8th Dist. Cuyahoga No. 102024, 2015-Ohio-2397, characterizing it as the Eighth District's reversal of a conviction for a trial court's failure to inform a defendant of his waiver of the right to remain silent and for that silence not to be commented on.

{¶37} In *Gaines*, the trial court informed the defendant he had the constitutional right "to remain silent and not to testify and [that] no one could comment on the fact that [he] did not testify at trial." *Id.* at ¶7. The defendant asked whether this meant he did not have to testify at trial. *Id.* The trial court's answer was not responsive to the defendant's question. *Id.* Therefore, the Eighth District concluded that the record did not demonstrate that the defendant understood that he did not have to testify. *Id.* at ¶9.

{¶38} *Gaines* is distinguishable from the present case, since the language of the respective trial courts was substantially different, and since Mr. Caudell did not indicate any misunderstanding of the trial court's advisement. In addition, we have held that Crim.R. 11(C)(2)(c) does not require the trial court to further explain that no one can

8

comment on a defendant's failure to testify. *State v. Schmidt*, 11th Dist. Portage No. 2012-P-0034, 2015-Ohio-2450, ¶25.

{¶39} Mr. Caudell also cites to this court's decision in *State v. Hayes*, 11th Dist. Portage No. 2014-P-0044, 2016-Ohio-2794, which involved identical language to that at issue in this case. *See id.* at ¶9 ("And, sir, do you understand you're not required to testify against yourself?"). The defendant in *Hayes* argued that the trial court's advisement was insufficient because it did not tell him he had the right to remain silent throughout trial and that it could not be used against him. *Id.* at ¶13. We found the trial court's language to be legally sufficient because it "clearly imports" that the defendant "had an absolute right to remain silent." *Id.* at ¶19.

{¶40} This court has found on at least three other occasions that a trial court's advisement containing identical language strictly complied with Crim.R. 11(C)(2)(c). *See Schmidt* at ¶26-27 (defendant asked if he understood he was not required to testify against himself); *State v. Kirschenmann*, 11th Dist. Portage Nos. 2014-P-0031 & 2014-P-0032, 2015-Ohio-3544, ¶61-64, 97 ("Sir, do you understand you're not required to testify against yourself?"; *State v. Riley*, 11th Dist. Portage No. 2018-P-0031, 2019-Ohio-3327, ¶36-39, 59 ("And, sir, do you understand you're not required to testify against yourself?"). *See also State v. White*, 8th Dist. Cuyahoga Nos. 52555 & 52556, 1987 WL 17883, *3-4 (Oct. 1, 1987) ("[Y]ou are not required to get on the witness stand, you are not required to testify against yourself").

{¶41} Mr. Caudell argues that the trial court's advisement in this case was insufficient for a reason not argued in *Hayes*: it informed him that there was no

9

requirement to testify at his own trial, but it did not state that he cannot be "compelled" to testify against himself.

{¶42} Mr. Caudell is correct that the trial court did not literally comply with Crim.R. 11(C)(2)(c) by stating he was "not required" to testify against himself rather than that he "cannot be compelled" to do so. We find this to be a distinction without a difference.

{¶43} The dictionary definition of "to require" includes "to demand as necessary or essential." *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/require (accessed March 3, 2020). Therefore, the trial court's advisement informed Mr. Caudell that he could choose not to testify, since it was not necessary or essential. However, the dictionary definition of "to require" also includes "to impose a compulsion or command on; compel." *Id.* Therefore, the trial court's advisement also effectively conveyed to Mr. Caudell that he could not be compelled to testify.

{¶44} Courts have found similar language to be in strict compliance with Crim.R. 11(C)(2)(c). For instance, in *State v. Madaris*, 156 Ohio App.3d 211, 2004-Ohio-653 (1st Dist.), the First District held that the trial court's use of the phrase "made to testify" effectively conveyed the meaning of "compelled to testify." *Id.* at ¶5.

{¶45} Similarly, in *State v. McElroy*, 8th Dist. Cuyahoga Nos. 104639, et al., 2017-Ohio-1049, the Eighth District held that the trial court's use of the phrase "right not to testify at trial" encompassed the right against compelled testimony. *Id.* at ¶27.

{¶46} And in *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, the Supreme Court of Ohio held that the trial court's advisement that the defendant had the "right to call witnesses to speak on your behalf" was a reasonably intelligible explanation of the

defendant's right to compulsory process of witnesses because the dictionary definitions of "to call" include "to summon." *Id.* at ¶17-20.

{¶47} By contrast, in *State v. Singh*, 141 Ohio App.3d 137 (11th Dist.2000), the trial court advised the defendant that "[y]ou could testify but you need not testify if you desire not to; do you understand that?" *Id.* at 142. This court held that the trial court's language failed to adequately apprise the defendant of his constitutional right against self-incrimination. *Id.* at 143. Unlike this case, the trial court's language in *Singh* encompassed only the defendant's choice whether to testify and not compulsory testimony.

{¶48} We conclude that the trial court explained Mr. Caudell's privilege against self-incrimination in a manner reasonably intelligible to Mr. Caudell and, thus, in strict compliance with Crim.R. 11(C)(2)(c). Mr. Caudell acknowledged his understanding that he was waiving such a right. Therefore, Mr. Caudell's guilty pleas were knowingly, intelligently, and voluntarily entered.

{¶49} Mr. Caudell's sole assignment of error is without merit.

{¶50} Based on the foregoing, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.